## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MJ ENTERPRISE HOLDINGS, INC.,    *
ROSS MARKAJANI,
                                 *
        *Plaintiffs*,
                                 *
    v.                              Civil Action No. RDB-24-3194
                                 *
SPIFFY FRANCHISING, LLC,
GET SPIFFY, INC.,                *
SCOT WINGO,
KARL MURPHY,                     *
CONNOR FINNEGAN,
DOES 1 THROUGH 20,               *

        *Defendants*.            *

*    *    *    *    *    *    *    *    *    *    *    *    *

## <u>MEMORANDUM OPINION</u>

This civil action arises from a franchise agreement between Plaintiffs MJ Enterprise Holdings, Inc. ("MJ Enterprise") and its Chief Executive Officer ("CEO") and Manager, Ross Markajani ("Mr. Markajani") (collectively, "Plaintiffs") and the nationwide, app-based car service companies Get Spiffy, Inc. ("Get Spiffy") and Spiffy Franchising, LLC ("Spiffy Franchising") (collectively, "Spiffy" or "Spiffy Entity Defendants"). (ECF No. 1 ¶¶ 1–2, 10–13.) On March 9, 2022, MJ Enterprise executed a Spiffy Franchise Agreement with Spiffy Franchising, including an agreement to arbitrate disputes arising thereunder, that authorized MJ Enterprise to open a Spiffy franchise in Maryland.[1] (*Id.* ¶ 11; ECF No. 23 at 4; ECF No. 24-2 at 5.) On the same date, Mr. Markajani signed a Personal Guaranty attached to the

---

[1] As MJ Enterprise's CEO and Manager, Mr. Markajani signed the Franchise Agreement on MJ Enterprise's behalf. (ECF No. 24-2 at 75.)

Franchise Agreement, under which he agreed to be personally bound by the terms of the Franchise Agreement.[2]  (ECF No. 24-2 at 84–85.)  MJ Enterprise's operation as a Spiffy franchisee was short-lived, however, and numerous financial, logistical, and operations difficulties allegedly caused by Spiffy's deceptive business practices led them to cease operations sometime in 2023.  (ECF No. 1 ¶¶ 73–78.)

Plaintiffs sought to mediate their claims related to the failed franchise operation but, after mediation failed, they demanded arbitration on December 29, 2023.  (ECF No. 32 at 4.) Ultimately, Plaintiffs initiated this action on November 4, 2024, by filing in this Court a nine-Count Complaint against Defendants Get Spiffy; Spiffy Franchising; Scot Wingo, Chief Executive Officer of Get Spiffy and Co-Founder of Spiffy ("Wingo"); Karl Murphy, President of Get Spiffy and Co-Founder of Spiffy ("Murphy"); Connor Finnegan, Vice President of Strategy at Get Spiffy and Head of Spiffy Franchising ("Finnegan") (collectively with Wingo and Murphy, "Spiffy Individual Defendants"), and Does One through Twenty ("Doe Defendants") (collectively, "Defendants").  Plaintiffs allege fraudulent inducement (Count I); negligent misrepresentation (Count II); fraudulent concealment (Count III); violation of Maryland's Franchise Law and Regulation ("Maryland Franchise Law"), MD. CODE ANN., BUS. REG. § 14-277 *et seq.* (Count IV); violation of the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-303 ("MCPA") (Count V); and violation of the Racketeer

---

[2]  In relevant part, Mr. Markajani agreed under the Personal Guaranty "to be personally bound by each and every condition and term contained in the Agreement, including but not limited to the non-compete provisions, and agree that this Personal Guaranty will be construed as though the undersigned and each of them executed an agreement containing the identical terms and conditions of the Agreement. The undersigned's liability under this undertaking shall be direct, immediate, and independent of the liability of, and shall be joint and several with, Franchisee[.]"  (ECF No. 24-2 at 84.)  Mr. Markajani's spouse also signed the Personal Guaranty.  (*Id.* at 85.)

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO") (Count IX) against all Defendants. (ECF No. 1.) Against Spiffy Entity Defendants, Plaintiffs also allege breach of contract (Count VI); account (Count VII); and rescission (Count VIII).[3] (*Id.*)

Presently pending before this Court is Defendants' Motion to Compel Arbitration and for Stay (ECF No. 22) ("Defendants' Motion"). Plaintiffs have responded in Opposition (ECF No. 32), and Defendants have replied (ECF No. 35). By Memorandum Opinion and Order dated March 10, 2025, Magistrate Judge Austin of this Court granted Defendants' request to stay all deadlines in this matter pending resolution of Defendants' Motion. *See* (ECF No. 34 at 9.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Defendants' Motion to Compel Arbitration and for Stay (ECF No. 22) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED and arbitration is COMPELLED as to Counts I, II, III, V, VI, VII, VIII, and IX. Defendants' Motion is DENIED as to the Maryland Franchise Law claim in Count IV, which is not subject to compelled arbitration. But this Court will not exercise supplemental jurisdiction to adjudicate Count IV at this time, and this action shall be STAYED in its entirety pending arbitration.[4]

---

[3] Plaintiffs invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, its federal question jurisdiction pursuant to 28 U.S.C. § 1331, and its supplemental jurisdiction under 28 U.S.C. § 1367. (ECF No. 1 ¶¶ 20, 21, 22.) Plaintiffs allege that, for the purposes of diversity jurisdiction, they are citizens of Maryland; Spiffy Entity Defendants are citizens of both Delaware, where they are incorporated, and North Carolina, where they have their principal places of business; and Spiffy Individual Defendants are citizens of North Carolina. (*Id.* ¶¶ 1–7.) Defendants admit these allegations regarding their residencies. (ECF No. 26 ¶¶ 2–7.) Plaintiffs also allege that federal question jurisdiction is proper as to Count IX, which alleges a violation of the federal RICO statute, and supplemental jurisdiction is proper as to the state-law claims in Counts I through VIII. (ECF No. 1 ¶¶ 20, 22.)

[4] As explained further below, the Court must stay all Counts subject to compelled arbitration but retains discretion as to whether to stay any Count not subject to compelled arbitration, including Count IV. *See Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 558 (4th Cir. 2015); *Smith v. Spizzziri*, 601 U.S. 472, 478 (2024). The Court concludes that staying Count IV together with all other Counts is appropriate in this matter.

## BACKGROUND

In early 2022, Mr. Markajani, as the Chief Executive Officer and Manager of MJ Enterprise, became interested in making MJ Enterprise a franchisee of the nationwide app-based car service known as Spiffy.  (ECF No. 1 ¶¶ 28, 10–12.)  Defendant Wingo founded Spiffy in 2014 to provide a range of "contactless, eco-friendly" car services, including car-washing, detailing, and related maintenance.  (*Id.* ¶ 10.)  Plaintiffs allege that Spiffy began to offer franchising opportunities in 2020.  (*Id.*)  In or about February 2022, Plaintiffs contacted Spiffy to discuss franchising opportunities in Maryland.  (*Id.* ¶ 11.)  Defendants sent Plaintiffs a copy of the Spiffy Franchise Agreement ("Franchise Agreement") on February 17, 2022.  (ECF No. 24 ¶ 5; ECF No. 24-3 at 3–4.)  On or about March 3, 2022, Mr. Markajani attended the Spiffy Franchise Discovery Day, where he heard presentations regarding growth projections related to franchising.  (ECF No. 1 ¶ 11.)  Defendants' pending Motion to Compel Arbitration and for Stay relates to the narrow question of arbitration under the parties' Franchise Agreement, and the Court limits its recitation of facts to the facts related to that Motion.

### I.      The Decision to Become Franchisee & Franchise Agreement

According to Mr. Markajani, his decision to make MJ Enterprise a franchisee was induced at least in part by Spiffy's fraudulent misstatements or exaggerations of its franchise system.  (*Id.* at ¶¶ 11, 161)  Plaintiffs allege that the presentations at the Spiffy Franchise Discovery Day included fraudulently inflated growth projections, and Defendants made

---

*See infra.*  Accordingly, this matter is stayed in its entirety pending arbitration of Counts I, II, III, V, VI, VII, VIII, and IX.

misleading claims about fleet service accounts, concealed material operational defects in their franchise model, and failed to provide promised logistical support. (*Id.* ¶¶ 11–16, 44–47, 79–86.) Similarly, Plaintiffs allege that Defendants fraudulently represented that "Spiffy had a fully formulated and thoroughly tested business model, strategy, and service concept that was sustainable and profitable" and that it had the resources and infrastructure necessary to support franchisees. (*Id.* ¶ 160.) Plaintiffs allege that these fraudulent claims and misrepresentations induced MJ Enterprise to execute the Franchise Agreement and Mr. Markajani to execute the related Personal Guaranty on or about March 9, 2022.[5] (*Id.* at ¶¶ 11, 161.); *see also* (ECF No. 24-2; ECF No. 24-2 at 85.) Among the Defendants, only Spiffy Franchising signed the Franchise Agreement. (ECF No. 23 at 11.) According to Plaintiffs, the Franchise Agreement included boilerplate language and clauses that obligated Spiffy to various actions related to National Accounts, Services Vehicles, Training Program, Operations Manuals, Selecting Vendors, Advertising and Promotion, and Pricing. (ECF No. 1 ¶¶ 138, 145.)

As relevant to the matter presently pending before this Court, Section 21(a)–(b) of the Franchise Agreement included a dispute resolution provision requiring arbitration of certain disputes between Plaintiffs as Franchisee and personal guarantor and Spiffy Franchising as Franchisor. (ECF No. 23 at 3–4.) Specifically, Section 21(a) contains a "Mediation Clause," and Section 21(b) contains an "Arbitration Clause." Under the Mediation Clause, the parties agreed that they were required to enter non-binding mediation prior to litigation. (ECF No.

---

[5] Although only MJ Enterprise executed the Franchise Agreement, Mr. Markajani executed an attached Personal Guaranty under which he "agree[d] to be personally bound by each and every condition and term contained in the Agreement." (ECF No. 24-2 at 84.)

24-2 at 67, § 21(a).)  Under the Arbitration Clause, the parties agreed to arbitrate disputes

"arising out of or relating to th[e Franchise] Agreement" in accordance with the Federal

Arbitration Act.  (*Id.* § 21(b).)  In relevant part, the Arbitration Clause provides:

> Therefore, the parties agree that, to the extent that any disputes cannot be resolved directly between Franchisee and Franchisor, and following compliance with the applicable mediation requirements set forth in Section 21(a) above, **any action arising out of or relating to this Agreement or the making, performance, or interpretation thereof shall upon thirty (30) days written notice by either party be resolved, except as elsewhere expressly provided in this Agreement, upon application by any such party by binding arbitration in Durham, North Carolina, in accordance with the Federal Arbitration Act under the Commercial Arbitration Rules then prevailing of the American Arbitration Association, including without limitation the Optional Rules for Emergency Measures of Protection ("AAA"), and not under any state arbitration laws, and judgment on the arbitration award may be entered in any court of competent jurisdiction**. Franchisee and Franchisor agree that arbitration shall be conducted on an individual - not a class-wide basis. The Federal Arbitration Act shall apply to all arbitration and arbitration venue questions. Any award by the arbitrator(s) shall be final, binding and non-appealable, except for errors of law. The matter shall be heard by one (1) arbitrator mutually selected by the parties who shall have at least ten (10) years' experience in practicing franchise law during which franchise law is or has been their primary area of practice and shall have substantial experience in the preparation of franchise agreements and franchise disclosure documents. Franchisee understands that by agreeing to arbitrate it gives up jury and appeal and other rights it might have in court.

(*Id.* at 68 § 21(b) (emphasis added).)

The Franchise Agreement also included an attached rider titled State Specific

Addendum and Franchise Disclosure Document ("Maryland Addendum"), (ECF No. 24-2 at

95, 103–105), which MJ Enterprise and Spiffy Franchising signed.  (ECF No. 24-2 at 95, 103–

105.)  This rider provided that "[t]o the extent any terms of an Applicable Rider conflict with

the terms of the Franchise Agreement, the terms of the Applicable Rider shall supersede the

terms of the Franchise Agreement." (*Id.* at 95.)  As relevant to the pending matter, under the

Maryland Addendum, Section 21 of the Franchise Agreement was amended to include:

> Any claims arising under the Maryland Franchise Registration and Disclosure Law must be brought within 3 years after the grant of the franchise.

> Franchisee may bring claims under the Maryland Franchise Registration and Disclosure Act in Maryland.

> This franchise agreement provides that disputes are resolved through arbitration. A Maryland franchise regulation states that it is an unfair or deceptive practice to require a franchisee to waive its right to file a lawsuit in Maryland claiming a violation of the Maryland Franchise Law. In light of the Federal Arbitration Act, there is some dispute as to whether this forum selection requirement is legally enforceable.

(ECF No. 24-2 at 104–105.)

On August 15, 2022, several months after MJ Enterprise and Mr. Markajani signed the

Franchise Agreement and Personal Guaranty, respectively, MJ Enterprise launched its Spiffy

franchise.  (ECF No. 1 ¶ 12.)  Plaintiffs allege that various difficulties in Spiffy's support for

its franchisees complicated Plaintiffs' franchise efforts even before they officially launched.

Prior to launching, for example, Plaintiffs allege that zoning difficulties rendered them unable

to find an appropriately zoned warehouse willing to assume the risks of storing the amount of

oil Spiffy required franchisees to store.  (*Id.* ¶¶ 29–30.)  Similarly, Plaintiffs allege that Spiffy

failed to provide sufficient guidance on pre-launch purchases and delayed in providing basic

supplies like phones and vans.  (*Id.* ¶¶ 31–34.)

After launching in August 2022, Plaintiffs struggled to maintain profits while servicing

Spiffy fleet accounts such as Amazon and Enterprise accounts.  (*Id.* ¶¶ 44–49.)  Mr. Markajani

alleges that misleading statements regarding fleet servicing—including Spiffy's erroneous

assertion that it was a fleet-approved vendor for Amazon Delivery Service Partners—had

originally piqued his interest in the franchise opportunity. (*Id.* ¶¶ 48–50.) Plaintiffs further allege that Spiffy engaged in opaque accounting practices and refused to allow Mr. Markajani to adjust the franchise's marketing practices based on recommendations from an outside marketing firm. (*Id.* ¶¶ 57–67.) Finally, Plaintiffs allege that Spiffy's application "was riddled with errors" that restricted service delivery, required repeated manual overrides, delayed services for clients, and placed undue burdens on Plaintiffs' operations. (*Id.* ¶¶ 68–72.) Plaintiffs allege that, based on these difficulties, they were forced to cease operations in or about June 2023. (*Id.* ¶¶ 73–78; ECF No. 32 at 4.)

## II.    Plaintiffs' Claims Against Defendants

Although Plaintiffs' Complaint contains no allegations regarding mediation or arbitration, the parties in their briefing make various assertions regarding their mediation and arbitration efforts prior to the filing of this action. *See, e.g.,* (ECF No. 23 at 3–6; ECF No. 25; ECF No. 32 at 2–4; ECF Nos. 32-1–32-4.) For clarity, the Court summarizes these assertions chronologically below, noting discrepancies where they arise.[6]

Plaintiffs assert in their Opposition to Defendants' Motion that, pursuant to the Franchise Agreement's Mediation Clause, they sought to mediate their claims against Defendants in 2023. (ECF No. 32 at 4; ECF No. 32-1 ¶ 3.) Defendants represent that Plaintiffs first notified them of a dispute on May 17, 2023, via written demand letter in

---

[6] As noted below, because a motion to compel arbitration is akin to a motion for summary judgment, material factual disputes may require a trial on the motion. *See, e.g., Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 713 (4th Cir. 2015). In this case, although the parties dispute some of the dates regarding mediation, they agree that Plaintiffs demanded arbitration, and the parties engaged in mediation. *See* (ECF No. 23 at 3–5; ECF No. 32 at 3–4.) Although the parties somewhat dispute whether Plaintiffs notified Defendants of alleged waiver of arbitration, Plaintiffs attach the correspondence in which they allegedly asserted such waiver. Accordingly, there are no disputes of material fact that would require this Court to conduct a trial on Defendants' Motion.

accordance with the Franchise Agreement's Mediation Clause. (ECF No. 23 at 4; ECF No. 24 ¶ 3.) The parties engaged in mediation either on August 18, 2023, or on December 11, 2023.[7] (ECF No. 32 at 4; ECF No. 23 at 4; ECF No. 25 ¶¶ 4–5; ECF No. 36 ¶ 4.) Although it does not appear that the parties engaged in further mediations after this date, their communications reflect continued efforts to schedule mediations. *See, e.g.*, (ECF No. 32-3.)

On December 29, 2023, Plaintiffs "served written notice of intent to file arbitration" on Defendants, and Plaintiffs' counsel subsequently followed up with several calls to Defendants. (ECF No. 32 at 4; ECF No. 32-1 ¶ 4; ECF No. 32-2 (Arbitration Demand Letter).) Plaintiffs assert that Defendants did not acknowledge the arbitration demand until January 24, 2024. (ECF No. 32 at 4; ECF No. 32-1 ¶ 5.) Plaintiffs contend that on January 30, 2024, the parties had a telephone call in which they discussed availability to proceed with mediation but did not discuss Plaintiffs' arbitration demand. (ECF No. 32-1 ¶ 6.) On February 27, 2024, Plaintiffs' counsel contacted Defendants' counsel to raise Plaintiffs' belief that "the time for arbitration has come and gone as it relates to franchisees who have already gone through mediation." (ECF No. 32-4 at 2; ECF No. 32-1 ¶ 7.) It does not appear that the parties engaged in further mediation or entered arbitration after February 27, 2024.

---

[7] This action is one of several civil actions filed against Spiffy in relation to its franchising practices, including a civil action filed in the Northern District of California. *See Siert v. Spiffy Franchising, LLC*, No. 5:24-cv-01771-EJD (N.D. Cal.). It appears from counsels' attached correspondence that counsel for both parties are also involved in the Northern District of California action. According to Defendants, Spiffy franchisees located in San Jose, California—referred to as the *Siert* plaintiffs—conducted mediations with Spiffy on August 18, 2023, but that mediation did not include Plaintiffs in this action. (ECF No. 36 ¶ 4; ECF No. 25 ¶ 5.) Defendants thus represent that they engaged in mediation with Plaintiffs on December 11, 2023. (*Id.*) Plaintiffs, however, represent that mediation between Plaintiffs and Defendants occurred on August 18, 2023. (ECF No. 32 at 4; ECF No. 32-1 ¶ 3.) Based on these filings, the Court concludes that the parties both agree that they engaged in one unsuccessful mediation session in 2023 and discussed scheduling related to future possible mediation sessions thereafter. The date of the mediation session is not material to the question of whether the parties are bound by the arbitration agreement contained within their undisputed Franchise Agreement.

On November 4, 2024, Plaintiffs initiated the instant action by filing in this Court a nine-Count Complaint against Defendants. *See* (ECF No. 1). In their Complaint, Plaintiffs allege against all Defendants fraudulent inducement (Count I); negligent misrepresentation (Count II); fraudulent concealment (Count III); violation of Maryland Franchise Law and Registration, MD. CODE ANN., BUS. REG. § 14-227, *et seq.* (Count IV); violation of the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-303 (Count V); and violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.* (Count IX). (ECF No. 1.) Plaintiffs also allege against Spiffy Entity Defendants breach of contract (Count VI); accounting (Count VII); and rescission (Count VIII). *See* (*id.*). On February 21, 2025, Defendants filed a Motion to Compel Arbitration and for Stay (ECF No. 22) ("Defendants' Motion") together with a supporting memorandum of law (ECF No. 23), and affidavits (ECF No. 24; ECF No. 25). The same day, Defendants also filed their Answer (ECF No. 26). Plaintiffs timely responded in Opposition (ECF No. 32), attaching an affidavit from counsel (ECF No. 32-1), and Defendants timely replied (ECF No. 35) and filed an associated affidavit from defense counsel (ECF No. 36). By Memorandum Opinion and Order dated March 10, 2025, Magistrate Judge Austin of this Court granted Defendants' motion to stay all deadlines in this matter pending resolution of Defendants' Motion. *See* (ECF No. 34). This matter is now ripe for review.

## STANDARD OF REVIEW

As Judge Chuang of this Court has previously explained, "[j]udges in this District have recognized that 'motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment.'" *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454

(D. Md. 2020) (quoting *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013)).  The U.S. Court of Appeals for the Fourth Circuit has held that the movant's burden in a motion to compel arbitration is "akin to the burden on summary judgment." *Galloway v. Santander USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016).  Accordingly, a motion to compel arbitration must be granted where the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs requests to compel arbitration.  Under the FAA, which reflects "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983):

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2.

As such, a federal court must compel arbitration and stay "any suit or proceeding" where: (1) a dispute exists between the parties; (2) there is a written agreement with an arbitration provision claimed to cover the dispute; (3) the transaction involves commerce; and (4) one party is refusing or neglecting to arbitrate. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).  Even so, "courts will not blindly apply the presumption in favor of arbitrability." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104 (4th Cir. 2012).  Ultimately, "the party seeking to compel arbitration . . . 'bears the burden of establishing the existence of a binding contract to arbitrate.'" *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (quoting *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024)).

In their Motion, Defendants contend that this case meets the four elements required to compel arbitration.  (ECF No. 23 at 6.)  Specifically, they assert that all parties agree they entered the Franchise Agreement, which included an Arbitration Clause, and Plaintiffs' Complaint and Defendants' Answer demonstrate the existence of a dispute between them. (*Id.* at 7.)  Additionally, Defendants contend that this dispute falls within the broad language of the parties' Arbitration Clause, which applies to "any action arising out of or relating to this [Franchise Agreement] or the making, performance, or interpretation thereof."  (*Id.* at 8.) Finally, Defendants assert that Spiffy Individual Defendants and Get Spiffy may compel arbitration even though they are not signatories to the Franchise Agreement because (1) they are agents of Spiffy Franchising, and (2) Plaintiffs do not distinguish between Spiffy Franchising and the remaining, non-signatory Defendants.  (*Id.* at 11–12.)

In Opposition, Plaintiffs appear to concede that there exists a dispute between the parties, the transaction involves commerce, and one party is refusing to arbitrate, but they challenge the formation and enforceability of the parties' agreement to arbitrate.  Plaintiffs first assert that no agreement to arbitrate was formed because the Maryland Addendum disrupted any mutual assent regarding arbitration.  (ECF No. 32 at 5–6.)  Next, they contend that the Arbitration Clause is unconscionable such that it is not enforceable, and it should not be re-written to make it enforceable.  (*Id.* at 6–9.)  Finally, Plaintiffs assert in the alternative that Defendants waived their right to arbitration by failing to timely respond to Plaintiffs' arbitration demand in December 2023.  (*Id.* at 9–10.)  The Court addresses each of Plaintiffs' arguments in Opposition in turn, ultimately concluding that the parties formed a valid and enforceable agreement to arbitrate as to all Counts except Count IV.

## I.    Choice of Law

As a threshold matter, because Plaintiffs challenge the formation and enforceability of the Arbitration Clause, the Court must determine under which state's law the Franchise Agreement should be interpreted.  Although the FAA is federal law, contract formation and enforceability are matters of state law.  *See Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 178 (4th Cir. 2025) ("Whether an arbitration agreement was properly formed is 'a question of ordinary state contract law principles.'" (quoting *Rowland v. Sandy Morris Fin'l & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021))).  Plaintiffs do not appear to directly discuss choice of law, but they raise their arguments under both federal and Maryland law.  *See* (ECF No. 32 at 7).  Defendants note, however, that Section 21(h) of the Franchise Agreement provides that the Franchise Agreement "and any claim or controversy arising out of or relating

to rights and obligations of parties" thereunder "shall be governed by and construed under the laws of the State of North Carolina." (ECF No. 23-2 at 70 § 21(h); ECF No. 35 at 5 n.2.)

Under both Maryland and North Carolina choice of law rules, "the law of the jurisdiction where the contract was made controls its validity and its construction." *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 253 (D. Md. 2011); *see also Covil Corp. v. U.S. Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 599 n.2 (M.D.N.C. 2021) (quoting *Sager v. Standard Ins. Co.*, 2011 WL 13253913, at *5 (E.D.N.C. Aug. 6, 2011)). In this case, Plaintiffs' allegations suggest that they executed the contract in Maryland, *see* (ECF No. 1 ¶¶ 11, 28), but it is unclear whether the Franchise Agreement was last executed in Maryland or North Carolina. Neither state's laws materially differ as to the mutual assent and unconscionability challenges at issue, and, to the extent possible, the Court applies law from both states to assess the Franchise Agreement.

## II.    Formation of Arbitration Agreement: Mutual Assent

The parties formed a valid agreement to arbitrate, including mutually assenting to the Arbitration Clause in the Franchise Agreement. As both parties acknowledge, the Maryland Franchise Law, codified in relevant part at MD. CODE ANN., BUS. REG. §§ 14-229(a)(3) and governed by MD. CODE REGS. § 02.02.08.16(L)(3), provides that a person commits a "misrepresentation to, deceit of, or fraud on the buyer" if that person "requires a franchisee to: . . . Waive the franchisee's right to file a lawsuit alleging a cause of action arising under the Maryland Franchise Law in any court of competent jurisdiction in this State." *Id.* § 02.02.08.16(L)(3) (citing MD. CODE ANN., BUS. REG. § 14-229(a)(3)). In this case, the Maryland Addendum to the Franchise Agreement recognized the implications of this prohibition on waiver of claims under the Maryland Franchise Law. *See* (ECF No. 24-2 at 95,

103–105.)  Plaintiffs contend that the discrepancy between the Maryland Addendum and the Arbitration Clause's requirement that arbitration occur in North Carolina destroyed any meeting of the minds on arbitration.  (ECF No. 32 at 6.)  In Reply, Defendants assert that Plaintiffs misstate Maryland law, which allows a franchisee to voluntarily waive their right to sue in Maryland.  (ECF No. 35 at 5–3.)

Under Maryland law, mutual assent requires "(1) intent to be bound, and (2) definiteness of terms." *Kantsevoy v. LumenR, LLC*, 301 F. Supp. 3d 577, 594 (Md. 2018).  Quite similarly, North Carolina provides that mutual assent exists where the parties "manifest an intent to be bound" such that "there has been a meeting of the minds as to all essential terms of the agreement." *Jackson v. Minn. Life Ins. Co.*, 275 F. Supp. 3d 712, 735–36 (E.D.N.C. 2017) (citations omitted).  Both parties objectively manifested their intent to be bound by the Arbitration Clause and the Maryland Addendum in this case because Plaintiffs and Spiffy Franchising each signed the Franchise Agreement including the Arbitration Clause and the Maryland Addendum.[8] *See* (ECF No. 24-2 at 75, 95, 105 (bearing parties' signatures)).  Thus, the only question is whether there is such conflict between the Maryland Addendum and the Arbitration Clause that the parties could not have assented to both.

In *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553 (4th Cir. 2015), the U.S. Court of Appeals for the Fourth Circuit considered and rejected an argument nearly identical to that Plaintiffs raise here.  In the *Chorley Enterprises* case, the Fourth Circuit concluded that a contractual addendum recognizing the implications of the Maryland

---

[8]  As noted above, Mr. Markajani signed the Personal Guaranty, under which he agreed to be bound by the terms of the Franchise Agreement.  (ECF No. 24-2 at 84.)

Franchise Law does not destroy mutual assent or intent to arbitrate where a franchise agreement contains an arbitration clause. *Id.* at 564–66. Specifically, the Fourth Circuit explained that "common law claims do not implicate the Maryland [Addendum] in the first instance" because it contained language applying only to claims arising under the Maryland Franchise Law. *Id.* at 565. "Read together then, the Arbitration [Clause] and Maryland [Addendum] demonstrate that the parties agreed to arbitrate all disputes except for the narrow carve-out for Maryland Franchise Law claims as set forth in the Maryland [Addendum.]" *Id.* at 566. Accordingly, the Fourth Circuit has held that parties may agree to arbitrate claims not arising under the Maryland Franchise Law while still preserving their right to bring such claims in courts in Maryland. *Id.*

Moreover, as Judge Russell of this Court recently recognized, under the Maryland Franchise Law and the Fourth Circuit's opinion in *Chorley Enterprises*, "franchisees are free to waive their right to file suit in Maryland so long as the waiver is not forced or involuntary." *Fusion Capital 1, LLC v. JB Bros., Inc.*, Civ. No. GLR-119-2947, 2020 WL 1854966, at *3 (D. Md. Apr. 13, 2020) (citing *Chorley Enters.*, 807 F.3d at 571); *see also Burrell v. 911 Restoration Franchise, Inc.*, Civ. No. JKB-17-2278, 2017 WL 5517383, at *4 n.4 (D. Md. Nov. 17, 2017) (distinguishing *Chorley Enterprises* to confirm validity of arbitration provision on basis that contract the Fourth Circuit interpreted explicitly prohibited arbitration of Maryland Franchise Law claims, while contract at issue in *Burrell* did not). Accordingly, to determine whether a Maryland rider waives or preserves a party's right to sue under the Maryland Franchise Law, courts look to the language of the contractual provisions at issue. *See Chorley Enters.*, 807 F.3d at 566–69; *Fusion Capital 1*, 2020 WL 1854966, at *3.

In this case, the Maryland Addendum explicitly states that "Franchisee may bring claims under the Maryland Franchise Registration and Disclosure Act in Maryland," and it recognizes that "[a] Maryland franchise regulation states that it is an unfair or deceptive trade practice to require a franchisee to waive its right to file a lawsuit in Maryland claiming a violation of the Maryland Franchise Law.  In light of the Federal Arbitration Act, there is some dispute as to whether this forum selection requirement is legally enforceable."  (ECF No. 24-2 at 104–105.)  By its plain language, the Maryland Addendum controls where there is a dispute between it and the Arbitration Clause.  (ECF No. 24-2 at 95.)  Accordingly, the Maryland Addendum controls to the extent it states that a party may bring Maryland Franchise Law claims in Maryland despite the Arbitration Clause requiring arbitration of all claims arising under the Franchise Agreement.  Although not as explicit as the language at issue in *Chorley Enterprises*, the plain language that "Franchisee may bring claims under the Maryland Franchise Registration and Disclosure Act in Maryland" supersedes the arbitration requirement contained in the Arbitration Clause.

As in *Chorley Enterprises*, Plaintiffs upon signing both the Franchise Agreement and the Maryland Addendum had a reasonable expectation that they agreed to binding arbitration of all claims except claims under the Maryland Franchise Law.  Accordingly, the parties formed a valid agreement to arbitrate all claims except claims arising under the Maryland Franchise Law.  Only Count IV arises under Maryland Franchise Law in this case, and Plaintiffs' remaining claims are subject to the validly formed Arbitration Clause.  *See Trouard v. Dickey's Barbecue Rests., Inc.*, Civ. Nos. PWG-14-1703, GLR-14-1650, 2016 WL 687487, at *4 (D. Md.

Feb. 19, 2016) (compelling arbitration for all claims but Maryland Franchise Law Claim and staying Maryland Franchise Law claim).

## III.  Enforceability of Arbitration Agreement

### A.  Unconscionability

Plaintiffs next contend that even if the Arbitration Clause was properly formed, it is unenforceable because it is unconscionable under Maryland and federal law.  (ECF No. 32 at 7.)  They assert that the Arbitration Clause is procedurally unconscionable because it was presented as a contract of adhesion in which they lacked meaningful opportunity to negotiate the terms of arbitration.  (*Id.*)  Relatedly, Plaintiffs argue that the Arbitration Clause is substantively unconscionable because it lacks mutuality due to one-sided terms that favor Defendants by (1) setting North Carolina as the forum for arbitration; (2) barring class claims and class actions; (3) mandating waiver of jury trials and punitive and exemplary damages; and (4) allowing Spiffy Franchising to file a court action for injunctive relief without posting bond. (*Id.* at 7–8.)  In Reply, Defendants contend that the Franchise Agreement was not procedurally unconscionable because Mr. Markajani had twenty days to review it prior to signing but never requested any changes, and Spiffy has agreed to material changes upon franchisees' request in other cases.  (ECF No. 35 at 5–6.)  Defendants also assert that Plaintiffs have not met their burden to show that the provisions of the Arbitration Clause are sufficiently one-sided to be substantively unconscionability.  (*Id.* at 6–11.)  As explained further below, Plaintiffs do not meet their burden to show procedural unconscionability in this case.[9]

---

[9]  As noted above, a showing of unconscionability requires the party raising the defense to prove *both* procedural and substantive unconscionability.  As courts in both Maryland and North Carolina have emphasized, even the most substantively unconscionable contract will not be deemed unconscionable absent some showing of procedural unconscionability.  *See Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008) ("[W]hile

Under both Maryland law and North Carolina law, unconscionability is an affirmative defense to enforcement of a contract, and the party asserting unconscionability bears the burden to prove both procedural and substantive unconscionability. *See, e.g.*, *Walther v. Sovereign Bank*, 872 A.2d 735, 743, 744–758 (Md. 2005); *Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 369–70 (N.C. 2008). As the Fourth Circuit has explained, procedural unconscionability involves "bargaining naughtiness" in "the process of making a contract[.]" *Walther*, 872 A.2d at 744 (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 n.12 (4th Cir. 1989); *see also Tillman*, 655 S.E.2d at 370 ("[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and inequality of bargaining power." (quoting *Rite Color Chem. Co., Inc. v. Velvet Textile Co., Inc.*, 411 S.E. 2d 645, 648 (N.C. 1992)). Maryland "law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms," but a contract may be procedurally unconscionable where there is no meaningful opportunity to negotiate its terms. *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 256–57 (D. Md. 2011) (quoting *Walther*, 872 A.2d at 745). Similarly, under North Carolina law, a contract is procedurally unconscionable where one party lacks "meaningful choice" during negotiation. *Raper v. Oliver House, LLC*, 637 S.E.2d 551, 555 (N.C. 2006) (quoting *Martin v. Sheffer*, 403 S.E.2d 555, 557 (N.C. 1991)).

---

the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa."); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 256 (D. Md. 2011) (explaining Maryland courts require both procedural and substantive unconscionability to void a contract on the basis of unconscionability (citing *Walther*, 872 A.2d at 744)). In this case, because Plaintiffs have made no showing at all of procedural unconscionability—and thus have not met their burden to demonstrate unconscionability—the Court makes no conclusions about the substantive unconscionability of the Franchise Agreement or Arbitration Clause.

As the party asserting unconscionability in this case, Plaintiffs bear the burden to show some unfairness in the bargaining process that rises to the level of procedural unconscionability. Although Plaintiffs assert procedural unconscionability based on their contention that the Franchise Agreement was offered "on a take-it-or-leave-it basis" and they had no "meaningful opportunity to negotiate essential terms of the Franchise Agreement," (ECF No. 32 at 7), these allegations are belied by record evidence. In their Complaint, Plaintiffs make the vague allegations that "Defendants required Plaintiffs to execute boilerplate contracts of adhesion in the form of the Franchise Agreement, offering merely illusory negotiation power despite Plaintiffs' lack of genuine opportunity to negotiate substantive terms." (ECF No. 1 ¶ 138.) Although Plaintiffs repeat similar assertions in their Opposition to Defendants' Motion, they offer no evidence to support their allegation that they lacked meaningful opportunity to negotiate.

To the contrary, the record demonstrates that Spiffy Franchising provided Plaintiffs a copy of the Franchise Agreement on February 17, 2022. (ECF No. 24 ¶ 5; ECF No. 24-3 at 3–4.) Plaintiffs allege that they did not sign the Franchise Agreement and Personal Guaranty until approximately March 9, 2022, some twenty days after receiving it. (ECF No. 1 ¶ 11; ECF No. 23 at 4.) Thus, there is no evidence that Plaintiffs were rushed or lacked meaningful opportunity to review and negotiate the Franchise Agreement's terms due to time constraints. *Cf. Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 653–54 (E.D.N.C. 2014) (noting expectation to sign contract in less than thirty minutes contributed to procedural unconscionability); *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 595 (D. Md. 2013) (noting failure to allow plaintiff to read the terms of arbitration before signing agreement

contributed to procedural unconscionability). The record demonstrates that Plaintiffs at minimum had twenty days to review, understand, and, if they wished, attempt to negotiate the terms of the Franchise Agreement. Yet, there is no evidence that Plaintiffs requested any changes in the Franchise Agreement before signing, and Plaintiffs do not assert that they made any such requests. *See* (ECF No. 32 at 7 (making unsupported statement that "Plaintiffs did not have a meaningful opportunity to negotiate the terms of the Franchise Agreement" without any supporting evidence); ECF No. 35 at 6 (arguing Mr. Markajani never requested changes to the Franchise Agreement); ECF No. 24 ¶ 7 (Defendant Finnegan averring that "Mr. Markajani never raised any questions or concerns about the arbitration provision between his receipt of the [Franchise Agreement] and his signing of the Franchise Agreement or at any time subsequent . . . ."); *see also Walther*, 872 A.2d at 746 n.6 (noting plaintiffs' failure to demonstrate that they tried to negotiate changes to purportedly procedurally unconscionable contract and were rebuffed).

Moreover, Spiffy Entity Defendants' emails to Plaintiffs regarding the Franchise Agreement suggest that they would have welcomed further discussion of the terms. Indeed, the Court notes that Defendants cite *Siert v. Spiffy Franchising, LLC*, 758 F. Supp. 3d 1142 (N.D. Cal. 2024), in which Spiffy Entity Defendants and Spiffy Individual Defendants were sued by a franchisee who, like Plaintiffs in this case, argued the Franchise Agreement was unconscionable because "it was presented as a contract of adhesion with significant disparity in bargaining power . . . ." *Id.* at 1151. In that case, the Northern District of California determined that Spiffy's Franchise Agreement was not procedurally unconscionable under California law in part because Defendants' "promptly responded to Plaintiffs' redlines and

incorporated most of their proposed changes, offering to have additional phone calls to discuss any unincorporated changes or answer any further questions" and the parties "continued to negotiate the terms of the Franchise Agreement after . . . changes were incorporated . . . ." *Id.* While the Court recognizes that Defendants' behavior in the *Siert* case does not indicate its behavior in this case, the *Siert* case demonstrates that Spiffy Entity Defendants have previously negotiated the terms of their Franchise Agreement at a franchisee's request.

Specifically, the Spiffy Strategy Associate who first sent Mr. Markajani the Franchise Agreement on February 17, 2022, informed Mr. Markajani that "[Franchise Agreements] are generally quite long with a lot of legalese and ours is no different, so please take your time reviewing in detail. The next steps in the process will be for you to read through the document and note any questions you'd like to discuss on our next call." (ECF No. 24-3 at 3–4.) Defendant Finnegan then contacted Mr. Markajani on February 22, 2022, to invite him to schedule a call "now that you've [Mr. Markajani] had some time to review the [Franchise Agreement] and pro forma template . . ." and to invite him to join Spiffy's "March discovery event." (ECF No. 24-3 at 3.) Plaintiffs provide no declarations, specific allegations, or evidence to support their assertion that they could not have meaningfully negotiated the terms of the Arbitration Clause and Franchise Agreement. There is simply no evidence that the Arbitration Clause or Franchise Agreement were offered to Plaintiffs on a "take-it-or-leave-it basis" or that Plaintiffs requested any changes to the Franchise Agreement at all. Accordingly,

Plaintiffs have not met their burden to show procedural unconscionability, and the Franchise Agreement and Arbitration Clause are enforceable.[10]

### B. Waiver

Finally, Plaintiffs contend as an alternative argument that Defendants waived their right to arbitration by failing to timely respond to Plaintiffs' demand for arbitration. (ECF No. 32 at 9.)  Plaintiffs argue that Defendants engaged in pre-litigation conduct inconsistent with arbitration by participating in mediation and delaying their response to Plaintiffs' demand for arbitration. (*Id.*)  Plaintiffs assert that Defendants failed to ensure arbitration was noticed within 30 days of Plaintiffs' demand, and, on February 27, 2024, Plaintiffs informed Defendants that they believed the arbitration right was waived. (*Id.*)  In Reply, Defendants contend that they had no obligation—and no logical option—to act upon Plaintiffs' arbitration notice because Plaintiffs initiated the demand for arbitration and thus had the obligation to commence arbitration of their claims against Defendants. (ECF No. 35 at 11.)  Relatedly, Defendants emphasize that the Franchise Agreement, under which Plaintiffs' right to arbitrate arose, by its plain language states that, "any action arising out of or relating to this Agreement . . . shall *upon thirty (30) days written notice by either party* be resolved, . . . *upon application by any such party* by binding arbitration in Durham, North Carolina."  (ECF No. 35 at 12 (quoting ECF No. 24-2 at 68 § 21(b) (emphasis added).)  Defendants assert that this language provides that the party invoking arbitration is also the party that files claims in arbitration. (*Id.*)  Finally,

---

[10]  Because the Court concludes that the Franchise Agreement and Arbitration Clause are enforceable, the Court does not reach Plaintiffs' alternative arguments related to rewriting Section 21 of the Franchise Agreement, including the Arbitration Clause. *See* (ECF No. 32 at 8–9).

Defendants assert that Plaintiffs misrepresent the text of their counsel's correspondence with Defendants' counsel on February 27, 2024. (*Id.* at 12.)

Generally, the party invoking arbitration must file the arbitration claims. *See, e.g.*, *Farnsworth v. PublishAmerica, LLLP*, Civ. No. L-07-241, 2009 WL 10682047, at *3 (D. Md. Feb. 17, 2009) ("Since PublishAmerica is invoking the arbitration clause, PublishAmerica must file the arbitration claim."); *Siert v. Spiffy Franchising, LLC*, 758 F. Supp. 3d 1142, 1152 (N.D. Cal. 2024) ("[I]t is Plaintiffs who bring grievances against Defendants, not the reverse. Plaintiffs fail to explain why or how Defendants could be obliged to initiate arbitration against themselves under these circumstances."). Federal courts have recognized, however, that parties may contractually determine which party bears the burden to initiate arbitration. *See, e.g.*, *McGowan v. NetApp, Inc.*, 2024 WL 3970683, at *3 (N.D. Cal. Aug. 28, 2024). Thus, where parties dispute which party bears the burden to initiate arbitration proceedings, courts evaluate the plain text of the arbitration agreement itself. *See, e.g.*, *Briggs v. Nationstar Mortgage, LLC*, 2016 WL 2644902, at *2–*3 (N.D.W. Va. May 9, 2016) (beginning with text of arbitration agreement before turning to American Arbitration Association's Commercial Arbitration Rules to resolve contractual silence as to burden to initiate arbitration); *Mellien v. U-Drive Motors, LLC*, 2024 WL 3673705, at *3 (M.D. Fla. Aug. 6, 2024) (collecting cases where "courts typically look to the governing arbitration rules or the parties' contract to determine who bears th[e] responsibility" to initiate arbitration).

In this case, the plain language of the parties' Arbitration Clause makes clear that the party who provides notice of arbitration is also the party who must apply for arbitration proceedings:

Therefore, the parties agree that, to the extent that any disputes cannot be resolved directly between Franchisee and Franchisor, and following compliance with the applicable mediation requirements set forth in Section 21(a) above, any action arising out of or relating to this Agreement or the making, performance or interpretation thereof shall *upon thirty (30) days written notice by either party* be resolved . . . *upon application by any such party by binding arbitration* in Durham, North Carolina, in accordance with the Federal Arbitration Act under the Commercial Arbitration Rules then prevailing of the American Arbitration Association . . . .

(ECF No. 24-2 at 68 § 21(b) (emphasis added).)  This unambiguous language plainly requires the party who provided written notice of intent to arbitrate to *also* apply for—that is, initiate—binding arbitration.  (*Id.*)  Accordingly, under the parties' Franchise Agreement, once Plaintiffs provided Defendants notice on December 29, 2023, of their intent to arbitrate, *see* (ECF No. 32 at 4; ECF No. 32-1 ¶ 4; ECF No. 32-2 (Arbitration Demand Letter)), Plaintiffs assumed the burden to apply for arbitration proceedings, (ECF No. 24-2 at 68 § 21(b)).[11]

Finally, Plaintiffs' argument that Defendants acknowledged their waiver of the right to arbitrate under the Franchise Agreement is unavailing.  The correspondence on which Plaintiffs rely for this assertion does not mention waiver and instead includes Plaintiffs' counsel's statement, "[i]t is also my opinion that the time for arbitration has come and gone

---

[11] Although Plaintiffs argue that Defendants delayed in responding to the arbitration notice and acknowledged that delay, Defendants responded to the arbitration demand within thirty days because they acknowledged receipt of the demand on January 24, 2024.  (ECF No. 32 at 4; ECF No. 32-1 ¶ 5.)  Additionally, the submitted exhibits indicated that Defendants' counsel acknowledged his "slow response," but did not indicate that he believed Defendants had delayed in responding to the arbitration demand.  (ECF No. 32-3 at 4–5.)  Thus, there is no evidence of cognizable delay under the terms of the Franchise Agreement.

Relatedly, Defendants filed their Motion to Compel Arbitration (ECF No. 22) on the same day that they timely filed their Answer (ECF No. 26) in this matter.  That is, there is no evidence that Defendants delayed in requesting arbitration as soon as they were procedurally able to do so because they had become subject to litigation by Plaintiffs.  *Cf. Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) (discussing delay where defendant waited eight months to seek to compel arbitration and made numerous other filings in litigation in the interim); *see also Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009) (suggesting "delay and participation in litigation will not alone constitute default" of the right to arbitrate).

as it relates to the franchisees who have already gone through mediation." (ECF No. 32-4.) This correspondence does not mention the word waiver or request that Defendants acknowledge waiver. At most, the correspondence reflects Plaintiffs' counsel's *opinion* that arbitration was by that time no longer an appropriate course of action. As an email from Plaintiffs' counsel, this statement does not constitute evidence of Defendants' overt waiver of arbitration. The exhibit does not provide Defendants' counsel's response, and thus there is no evidence that Defendants admitted waiver of arbitration. Accordingly, Defendants have not waived their right to arbitration.

### IV.    Appropriateness of Arbitration as to Non-Signatory Defendants & Stay

For the reasons explained above, Defendants have met their burden to demonstrate that this Court must compel arbitration. *See Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). Specifically, Defendants have met their burden to demonstrate that the parties agreed to arbitrate all claims except those arising under the Maryland Franchise Law. In this case, only Count IV raises a claim under the Maryland Franchise Law, MD. CODE ANN., BUS. REG. § 14-227 *et seq. See* (ECF No. 1 ¶¶ 129–135.) The appropriateness of compelling arbitration as to all claims as to all Defendants in this case, however, raises two distinct issues. First, the Court must determine whether Plaintiffs' claims against Defendants who are not signatories to the Franchise Agreement are compelled to proceed to arbitration. Second, the Court must determine whether it is appropriate to stay Count IV, which the parties did not agree to arbitrate under the Franchise Agreement. The Court addresses both issues in turn.

### A. Arbitration of Claims against Non-Signatory Defendants

As Defendants note, only Spiffy Franchising signed the Franchising Agreement, while Spiffy Individual Defendants and Get Spiffy are not signatories to the agreement. (ECF No. 23 at 11.) Even where defendants are not signatories to the agreement containing the relevant arbitration provision, however, they may invoke an arbitration provision under the state-law doctrine of agency. *See, e.g. Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) ("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract."); *see also GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020) (discussing application of traditional principles of state law to allow enforcement of arbitration agreement by nonsignatory under Chapter One or Section Two of FAA) Accordingly, non-signatory defendants may invoke an arbitration clause as to the claims against them where "the facts and claims against [signatory and non-signatory defendants] are so closely intertwined that [plaintiff's] claims against the non-signatory [defendants] are properly referable to arbitration even though [non-signatory defendants] are not formal parties to the [Arbitration] Agreement." *Long*, 248 F.3d at 320.

In this case, Plaintiffs do not differentiate their claims between Spiffy Franchising and the non-signatory Defendants. Indeed, Plaintiffs directly allege an agency relationship between non-signatory Defendants and Spiffy Franchising by alleging, "each of these Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of other defendants and each and all were at all times acting in the scope of the agency, affiliation, alter-ego relationship and/or employment . . . ." (ECF No. 1 ¶ 9.) Put differently, Plaintiffs explicitly allege an agency relationship between all Defendants and, by

27

failing to differentiate claims against Spiffy Franchising and non-signatory Defendants, implicitly allege that "the facts and claims" against Spiffy Franchising and all other Defendants are inherently intertwined.  *See generally* (ECF No. 1).  Accordingly, it is appropriate to allow non-signatory Defendants in this case to invoke arbitration under principles of agency.  *See Long*, 248 F.3d at 320–21; *accord Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).  Moreover, if non-signatory Defendants were forced to litigate their portion of the Plaintiffs' claims, it would inappropriately undercut the FAA's strong policy in favor of arbitration by allowing identical claims to proceed in litigation against non-signatories despite pending arbitration of the same claims against Spiffy Franchising.  *Long*, 248 F.3d at 320 (quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976)).

### B.  Stay of All Claims

Under both the Federal Arbitration Act ("FAA") and the Supreme Court's recent decision in *Smith v. Spizziri*, 601 U.S. 472 (2024), a court *must* stay an action pending arbitration where it determines that arbitration is required under the FAA and a party has requested a stay pending arbitration.  9 U.S.C. § 3; *Smith*, 601 U.S. at 478.  The Fourth Circuit has recognized, however, that where, as here, the parties agreed to arbitrate some claims but not others, the FAA "requires piecemeal litigation" in which arbitration is compelled as to the appropriate claims and the district court retains discretion to stay the remaining claims.  *Chorley Enterprises*, 807 F.3d at 558.  Accordingly, this Court must stay Counts I, II, III, V, VI, VII, VIII and IX but retains discretion as to whether to stay the Maryland Franchise Law Claim in Count IV.

As this Court has previously recognized, stay of all claims is appropriate where "the arbitrator's decision may preclude the need for litigation or inform the Court's analysis of the

issues." *Trouard v. Dickey's Barbecue Rests., Inc.*, Civ. Nos. PWG-14-1703, GLR-14-1650, 2016 WL 687487, at *1 (D. Md. Feb. 19, 2016).  Similarly, where arbitration of some claims is likely to facilitate fact-finding relevant to claims not subject to arbitration, "considerations of judicial economy and avoidance of confusion and possible inconsistent results . . . militate in favor of staying the entire action." *Am. Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980).  In this case, Count IV closely relates to Plaintiffs' other claims because each claim arises from allegations of misrepresentations related to the Franchise Agreement and Defendants' alleged failure to comport with their obligations under the Franchise Agreement. *See generally* (ECF No. 1); (*id.* ¶ 129 (incorporating by reference into Count IV "each and every allegation contained in the paragraphs above").  Thus, allowing litigation to proceed as to Count IV without the benefit of the ruling of the arbitrator could result in "confusion and inconsistent results." *Trouard*, 2016 WL 687487at *3.  Accordingly, the Court stays Counts I, II, III, V, VI, VII, VIII, and IX, and in its discretion stays Count IV.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Arbitration and For Stay (ECF No. 22) is GRANTED IN PART and DENIED IN PART.  Specifically, Defendants' Motion is GRANTED and arbitration is COMPELLED as to Counts I, II, III, V, VI, VII, VIII, IX and DENIED as to Count IV, which is not subject to compelled arbitration.  This matter is STAYED in its entirety pending arbitration of Counts I, II, III, V, VI, VII, VIII, IX.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: July 30, 2025